IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT BARNARD and BRYAN          §
AHRENS, on Behalf of Themselves   §
and on Behalf of All Others       §
Similarly Situated,               §
                                  §
          Plaintiffs,             §
                                  §
v.                                §        CIVIL ACTION NO. H-11-2198
                                  §
INTERTEK USA INC. D/B/A/          §
INTERTEK CALEB BRETT,             §
                                  §
          Defendant.              §
                                  §

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] is Plaintiffs' Motion to Certify Class (Doc. 50). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiffs' motion be **GRANTED**. The court also **OVERRULES** Plaintiffs' Objections to Defendant's Response in Opposition to Motion to Certify Class (Doc. 56).

## I.  Case Background

Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., against Defendant Intertek Caleb Brett ("Defendant"), alleging that Defendant denied them overtime pay at the federally mandated rate. Plaintiffs assert that the policies maintained by Defendant, which denied them

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 37.

overtime pay, also affected other employees in similar positions.

## A.  <u>Factual History</u>

The following factual account is derived from Plaintiffs' first amended complaint.[2] Defendant is engaged in the business of providing "laboratory testing, laboratory outsourcing, cargo inspection, and certification services for clients on a global basis."[3]  In order to provide these services, Defendant employed Plaintiffs as Oil, Gas, and Chemical Inspectors ("inspectors").[4] Defendant utilized a fluctuating workweek method of compensation to pay Plaintiffs, and, in January 2010, Defendant's use of this method was found to be in violation of the FLSA by the United States District Court for the District of New Jersey in <u>Adeva v. Intertek USA, Inc.</u>, No. 09-1096(SRC), slip op., 2010 WL 97991 (D.N.J. Jan. 11, 2010).[5]  Defendant continued to use the fluctuating workweek method of compensation until October 2010, after which date Defendant compensated its employees on an hourly basis.[6]

Under both methods of pay, Plaintiffs claim that, after their

---

[2]  <u>See</u> Doc. 43, Pls.' 1st Am. Compl.

[3]  <u>Id.</u> ¶ 18.

[4]  Plaintiffs' first amended complaint originally indicated that other employees, such as dispatchers, were potential plaintiffs.  <u>See</u> <u>id.</u> ¶ 38.  The pending motion, however, limits the potential class to inspectors.  <u>See</u> <u>id.</u> ¶¶ 19-20; Doc. 50, Pls.' Mot. for Notice to Potential Class Members, p. 4.

[5]  <u>See</u> Doc. 43, Pls.' 1st Am. Compl., ¶¶ 21, 24-25; Doc. 43, Ex. A-1 to Pls.' 1st Am. Compl., U.S. Dist. Court for the Dist. of N.J. Order.

[6]  <u>See</u> Doc. 43, Pls.' 1st Am.  Compl., ¶ 21.

scheduled workday, they often worked at home on tasks directly related to their jobs, including "completing mandatory paperwork, responding to emails, answering telephone calls and other such work."[7]  Plaintiffs allege they did not receive compensation for any of their off-the-clock work despite the fact that Defendant knew or should have known that such work was being completed after the workday ended.[8]

Additionally, Plaintiffs allege that Defendant failed to incorporate compensation received by Plaintiffs from a weekly "auto allowance" and a daily "meal allowance" in setting Plaintiffs' gross wages.[9]  Although Defendant characterized the auto allowance as a reimbursement expense, Defendant paid federal employment taxes on the allowance and represented it as wages to the Internal Revenue Service (IRS).[10]  Plaintiffs also paid taxes on the auto allowance as the amount was included as wages on their W-2 forms.[11] The auto allowance was provided without regard to "actual miles driven, distance driven, time driven, or any wear and tear on the

---

[7]     Id. ¶ 31; see id. ¶ 30.  The mandatory paperwork referenced by Plaintiffs included "gauge tickets," "certificates of quantity," "time logs," "barge service reports," "vessel service reports," and "clean tank certificates." Id. ¶ 32.

[8]     Id. ¶¶ 29, 33.

[9]     Id. ¶ 34.

[10]    See id. ¶¶ 35-37, 84-85.

[11]    See id. ¶ 86.

vehicle," and the amount of the allowance, remained constant.[12] Moreover, the auto allowance was provided separately from, and in addition to, a mileage reimbursement on which Defendant did not withhold taxes and did not include as wages on Plaintiffs' W-2 forms.[13]

Regarding the daily meal allowance, Plaintiffs allege that it constituted a payment by Defendant primarily for the benefit and convenience of Plaintiffs.[14] As with the auto allowance, Defendant did not include this daily compensation as part of Plaintiffs' gross wages.[15] Consequently, the meal allowance was also not included in determining Plaintiffs' hourly rate or in computing their overtime rate.[16]

Defendant continues to exclude the auto allowance and meal allowance as part of Plaintiffs' gross wages in calculating their hourly and overtime rates.[17] Plaintiffs assert that Defendant's exclusion of this compensation was willful and persisted despite the entry of summary judgment against Defendant by the United States District Court for the District of New Jersey in the Adeva

---

[12] Id. ¶ 39.

[13] See id. ¶ 40.

[14] See id. ¶¶ 45-46.

[15] See id. ¶ 48.

[16] See id.

[17] See id. ¶¶ 43, 49.

case.[18]

**B.   <u>Procedural History</u>**

Plaintiffs filed this lawsuit against Defendant on June 10, 2011, alleging violations of the FLSA.[19]  On unopposed motion, the court granted leave for Plaintiffs to amend their complaint.[20] Plaintiffs filed their amended complaint on November 7, 2011, alleging violations of §§ 206, 207, and 211(c) of the FLSA.[21] Plaintiffs also asserted collective action allegations and argued that estoppel precluded Defendant from asserting that the "auto allowance" did not constitute wages.[22]

Five weeks later, on November 23, 2011, Plaintiffs filed the pending motion to certify class.[23]  On December 14, 2011, Defendant responded to Plaintiffs' motion, to which Plaintiffs replied on January 17, 2012.[24]  That same day, Plaintiffs also filed objections to Defendant's response, to which Defendant responded on February

---

[18]    <u>See</u> <u>id.</u> ¶¶ 51-52.

[19]    <u>See</u> Doc. 1, Pls.' Orig. Compl.

[20]    <u>See</u> Doc. 42, Order Granting Pls.' Mot. for Leave to File Am. Compl.; <u>see also</u> Doc. 40, Pls.' Unopp. Mot. for Leave to File Am. Compl.

[21]    <u>See</u> Doc. 43, Pls.' 1st Am. Compl.

[22]    <u>See</u> <u>id.</u> ¶¶ 64-88.

[23]    <u>See</u> Doc. 50, Pls.' Mot. to Certify Class.

[24]    <u>See</u> Doc. 56, Def.'s Resp. to Pls.' Mot. for Notice to Potential Class Members; Doc. 63, Pls.' Reply to Def.'s Resp. to Pls.' Mot. for Notice to Potential Class Members; <u>see also</u> Doc. 79, Pls.'s Supp. Reply to Def.'s Resp. to Pls.' Mot. for Notice to Potential Class Members; Doc. 82, Def.'s Surreply to Pls.'s Mot. for Notice to Potential Class Members.

7, 2012.[25]

## II.  **Legal Standard**

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours.  29 U.S.C. § 207(a).  It allows employees to bring an action against their employers for violation of its hour and wage provisions.  See 29 U.S.C. §§ 215-216.  An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated.  No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, i.e., to persons alleged to be "similarly situated" to the named plaintiff(s).  Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are "similarly situated" is generally made by using one of two analyses: (1) the two-step analysis described in Lusardi v. Xerox Corporation, 118 F.R.D. 351, 359 (D.N.J. 1987), or (2) the "spurious class action" analysis described in Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990).  See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining

---

[25]    See Doc. 64, Pls.' Objections to Def.'s Resp. to Pls.' Mot. for Notice to Potential Class Members; Doc. 75, Def.'s Resp. to Pls.' Objections.

to decide which of the two analyses is appropriate), <u>overruled on other grounds</u>.[26]   Although the Fifth Circuit has not ruled on which approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action, most courts in this district follow the <u>Lusardi</u> approach in suits under § 216(b) of the FLSA.   <u>See, e.g.</u>, <u>Tolentino v. C & J Spec-Rent Servs., Inc.</u>, No. C-09-326, 2010 WL 2196261, at *3 (S.D. Tex. May 26, 2010) (collecting cases).

Under the <u>Lusardi</u> approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600 F.3d 516, 519 (5th Cir. 2010) (citing <u>Mooney</u>, 54 F.3d at 1213-14).   The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." <u>Mooney</u>, 54 F.3d at 1214 n.8.   If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit.   <u>Acevedo</u>, 600 F.3d at 519 (citing <u>Mooney</u>, 54 F.3d at 1214).   Next, once discovery has largely been completed, and, thus, more information on the case made available, the court makes a final determination on whether the

---

[26]   <u>Mooney</u> was an action under the Age Discrimination in Employment Act ("ADEA"), but it applies here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly situated employees.   <u>See</u> 54 F.3d at 1212.

plaintiffs are similarly situated and whether they can proceed together in a single action.[27]  Id.   The present case is at the initial, or notice, stage of the Lusardi analysis.

The Lusardi approach is consistent with Fifth Circuit dicta, stating that the two-step approach is the typical manner in which these collective actions proceed.  Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 n.2 (5th Cir. 2008).  The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class action described by [Rule 23] and that provided for by [Section 216(b)]," i.e., the "opt out" procedure for class members under Rule 23 as opposed to the "opt in" procedure under Section 216(b).  LaChapelle v. Owens-Ill., Inc., 513 F.2d 286, 288 (5th Cir. 1975); see also Donovan v. Univ. of Tex. at El Paso, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect,

---

[27]     In contrast, the Shushan approach, known as the "spurious class action" analysis, evokes the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

> Shushan espouses the view that [29 U.S.C. § 216(b) ("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23]. Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . . [the FLSA]. In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification.  In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified.   Under this methodology, the primary distinction between a . . . [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the . . . [FLSA] representative action are not bound by its results.  In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results.

Mooney, 54 F.3d at 1214.

constitutes a congressionally developed alternative to the [Rule 23] procedures."). This court, therefore, will analyze Plaintiff's claims using the Lusardi method.

In the absence of Fifth Circuit guidance on the appropriate test to use at the notice stage of the Lusardi analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification. Some courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. See, e.g., Cantu v. Vitol, Inc., No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); Tolentino, 2010 WL 2196261, at *8-9. Other courts, however, have rejected the third, non-statutory element. See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc., No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (unpublished); Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007).

The court agrees with the latter camp that Plaintiffs need not present evidence of the third element at this stage of the certification process. There are several reasons for this. First, as already stated, this element is not a statutory requirement at this stage. See 29 U.S.C. § 216(b). Second, this element has not

been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited.   Rather, the Fifth Circuit's discussion of the <u>Lusardi</u> approach only requires, at the first stage, that "putative class members' claims [be] sufficiently similar to merit sending notice of the action to possible members of the class."   <u>See</u> <u>Acevedo</u>, 600 F.3d at 519 (citing <u>Mooney</u>, 54 F.3d at 1213-14).

Third, unlike under Rule 23, there is no numerosity requirement in an FLSA class action lawsuit under the <u>Lusardi</u> approach.   <u>See, e.g.</u>, <u>Badgett v. Tex. Taco Cabana, L.P.</u>, No. Civ.A.H 05-3624, 2006 WL 367872, at *2 (S.D. Tex. Feb. 14, 2006) (Lake, J.) (unpublished) (citing <u>Mooney</u>, 54 F.3d at 1214, n.8) ("[A]t the notice stage [in an FLSA action using the <u>Lusardi</u> approach], courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." (internal quotations omitted)).

Finally, this element, requiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes.   <u>See</u> <u>Tony & Susan Alamo Found. v. Sec'y of Labor</u>, 471 U.S. 290, 296 (1985).   Liberally construing the FLSA to effect its purposes, the court finds that it is enough for Plaintiffs to

10

present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually wish to join the lawsuit. The court will now proceed to look at the other elements of the test.

### III. <u>Analysis</u>

Defendant urges the court to reject Plaintiffs' request for a conditional class action certification.  It argues that Plaintiffs cannot demonstrate the existence of similarly situated inspectors "with respect to the analysis required to determine whether their expense allowances are disproportionately large" because: (1) Plaintiffs' claims must be resolved on a case-by-case basis due to the "highly individualized and highly fact-specific nature of disputes about expense reimbursements," and (2) the allowances were not disproportionately large as a matter of law.[28]

Although class action certification is procedural, determining whether it should be applied in a given case cannot be done in a vacuum.  The manner and scope of its application depends upon the nature and purpose of the substantive law to be enforced, i.e., in the context of the substantive law of the asserted claims.  <u>See, e.g.</u>, <u>Vuyanich v. Republic Nat. Bank of Dallas</u>, 82 F.R.D. 420, 429 (N.D. Tex. 1979) (noting the same in a Title VII lawsuit).  "The modern manifestation of the class action is an efficacious

---

[28]    Doc. 56, Def.'s Resp. to Pls.' Mot. for Notice to Potential Class Members, p. 1.

jurisprudential tool, whose applicability is neither universal nor monocentric." Jones v. Diamond, 519 F.2d 1090, 1099 (5th Cir. 1975). "Rather, the trial court must ascertain the appropriateness of the class procedure only after a sensitive weighing of all the facts." Id. In sum, the court must determine "what is the most sensible approach to the class determination issue which can enable the litigation to go forward with maximum effectiveness from the viewpoint of judicial administration." Id.

The substantive law underlying the court's analysis in the present case is whether Defendant's payments, characterized as expense reimbursements, should have been included as wages under the FLSA. Personal expense reimbursements made by the employer "for expenses normally incurred by the employee for his own benefit . . . increas[e] the employee's regular rate thereby," and should be properly included as wages. 29 C.F.R. § 778.217(d). These payments for "normal, everyday expenses" such as "traveling to and from work, buying lunch, paying rent, and the like" cannot be "excluded from wages as 'reimbursement for expenses.'" Id.

If an employee incurred expenses on behalf of or for the convenience of the employer, reimbursement payments "are not included in the employee's regular rate . . . [because] [s]uch payment is not compensation for service rendered by the employees during any hours worked in the work week." 29 C.F.R. § 778.217(a); Berry v. Excel Group, Inc., 288 F.3d 252, 253 (5th Cir. 2002).

Expenses in this category are therefore properly reimbursable by the employer.  See 29 C.F.R. § 778.217(a).  The regulations include an illustrative list of examples of these types of expenses, including:

> (3) The actual or reasonably approximate amount expended by an employee, who is traveling "over the road" on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home, other travel expenses, such as taxicab fares, incurred while traveling on the employer's business.
> (4) "Supper money", a reasonable amount given to an employee, who ordinarily works the day shift and can ordinarily return home for supper, to cover the cost of supper when he is requested by his employer to continue work during the evening hours.

29 C.F.R. § 778.217(b). However, only the "actual or reasonably approximate amount of the expense" may be excluded from an employee's regular rate of pay.  29 C.F.R. § 778.217(c).  If the reimbursement amount is "disproportionately large, the excess amount will be included in the regular rate."  Id.

Therefore, to resolve the ultimate outcome of this case, the court will need to determine whether Defendant properly characterized the automobile allowance, mileage reimbursement, and meal allowance as expenses incurred by Plaintiffs on Defendant's behalf.  If the court finds that these payments were properly characterized as reimbursements on the employer's behalf and thus properly excluded from wages, the court will then examine whether the expense payments were disproportionately large.  If so, the excess reimbursement amount will be included as part of Plaintiffs'

gross wages.

Here, Defendant argues that the court cannot resolve these issues collectively because the court must evaluate these issues on a "case-by-case basis," as stated by the Fifth Circuit in <u>Berry</u>.[29] <u>Berry</u>, however, addressed whether a per diem payment, which served to reimburse expenses "incurred primarily for the employer's benefit," was disproportionately large—as applied to a single plaintiff-and should consequently be included as wages. 288 F.3d at 252-53; <u>see</u> 29 C.F.R. § 778.217. Although the court may ultimately decide (1) whether Defendant's expense reimbursements were for the benefit of Plaintiffs or Defendant; and (2) if the latter, whether the reimbursements were "approximate and reasonable" as to each Plaintiff, it shall not do so at the certification stage. Defendant's arguments relying on <u>Berry</u> are misplaced at this stage and are more suited to a summary judgment motion.[30]

Further, examining on a "case-by-case basis," means that the court must take each lawsuit as it comes, and not necessarily that the court must look at each individual plaintiff at this time. Contrary to Defendant's position, the court finds no support for

---

[29]    Doc. 56, Def.'s Resp. to Pls.' Mot. for Notice to Potential Class Members, p. 10.

[30]    Given that <u>Berry</u> neither dealt with collective action treatment, nor held that expense reimbursements are automatically for the convenience of the employer and are thus always appropriate and reasonable, <u>Berry</u> has no bearing on the conditional class certification issue presently before the court.

the assertion that it must perform an individualized analysis of each Plaintiff's circumstances in order to determine whether the reimbursements at issue were paid on behalf of Defendant or Plaintiffs.   Later, it may be proper for this court to do an individualized determination to determine whether or not the reimbursements were "approximate and reasonable" as to each employee.  Picton v. Excel Group, Inc., 192 F. Supp.2d 706, 711-12 (E.D. Tex. 2002).

At this stage of the proceedings, the court need only find that Plaintiffs made "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  Mooney, 54 F.3d at 1214 n.8.  To satisfy this standard, Plaintiffs must show: (1) that other aggrieved individuals exist; (2) these individuals are similarly situated with respect to the pay practice at issue, and (3) the existence of some evidence that aggrieved individuals want to join the suit.[31]

Plaintiffs have alleged that other inspectors exist who share the same job duties.[32]  Plaintiffs' motion is accompanied by declarations from nine inspectors who all state that their jobs "involved inspecting bulk cargo, transporting chemicals for

---

[31] As discussed above regarding this third element, it is enough for Plaintiffs to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually intend to join the lawsuit.  Watson, et al. v. Konica Minolta Bus. Solutions USA, Inc., No. Civ. A. H-10-986, at *11 (S.D. Tex. Nov. 22, 2012).

[32] See Doc. 50, Pls.' Mot. for Notice to Potential Class Members, pp. 17-18.

testing, and monitoring shipments of various goods."[33]   They all
drove their personal vehicles to shipyards and terminals to perform
work assignments given out from Defendant's local offices.[34]   They
also all state that they knew other inspectors had the same
duties.[35]

Plaintiffs have also alleged that Defendant's treatment of
expense reimbursements is common among all inspectors regardless of
location.[36]   Contrary to Defendant's contention that Plaintiffs have
provided no evidence of a common pay plan,[37] Plaintiffs produced
declarations stating that they and other inspectors were paid on an
hourly basis, and that they all received the same amount in auto

---

[33]      Doc. 50-3, Ex. 2 to Pls.' Mot. for Notice to Potential Class Members,
Decl. of Robert Barnard, ¶ 3;  Doc. 50-4, Ex. 3 to Pls.' Mot. for Notice to
Potential Class Members, Decl. of Bryan Ahrens, ¶ 3;  Doc. 50-5, Ex. 4 to Pls.'
Mot. for Notice to Potential Class Members, Decl. of Patrick Cary, ¶ 3;  Doc. 50-
6, Ex. 5 to Pls.' Mot. for Notice to Potential Class Members, Decl. of Kenneth
Vordenbaum, ¶ 3;  Doc. 50-7, Ex. 6 to Pls.' Mot. for Notice to Potential Class
Members, Decl. of Duwayne Gilyot, ¶ 3;  Doc. 50-8, Ex. 7 to Pls.' Mot. for Notice
to Potential Class Members, Decl. of Thomas Barron, ¶ 3;  Doc. 50-9, Ex. 8 to
Pls.' Mot. for Notice to Potential Class Members, Decl. of Mark Phelan, ¶ 3;
Doc. 50-10, Ex. 9 to Pls.' Mot. for Notice to Potential Class Members, Decl. of
Jeffery Walton, ¶ 3;  Doc. 50-11, Ex. 10 to Pls.' Mot. for Notice to Potential
Class Members, Decl. of Juan Montoya, ¶ 3. The declarations filed by Plaintiffs
are substantially similar and support the issues.  For the sake of convenience,
the court will refer only to Exhibits 2 and 3 from this point forward.

[34]      Doc. 50-3, Ex. 2 to Pls.' Mot. for Notice to Potential Class Members,
Decl. of Robert Barnard, ¶ 3;  Doc. 50-4, Ex. 3 to Pls.' Mot. for Notice to
Potential Class Members, Decl. of Bryan Ahrens, ¶ 3.

[35]      Doc. 50-3, Ex. 2 to Pls.' Mot. for Notice to Potential Class Members,
Decl. of Robert Barnard, ¶ 3;  Doc. 50-4, Ex. 3 to Pls.' Mot. for Notice to
Potential Class Members, Decl. of Bryan Ahrens, ¶ 3.

[36]      See Doc. 50, Pls.' Mot. for Notice to Potential Class Members, pp.
18-19.

[37]      Doc. 56, Def.'s Resp. to Pls.' Mot. for Notice to Potential Class
Members, pp. 12-13.  Plaintiffs' motion is unclear as to whether they contend
that Defendant's mileage reimbursements also violates the FLSA.

allowances, meal allowances for lunch, and mileage reimbursements.[38]
Plaintiffs further claim that these expense reimbursements were
never included in calculating their overtime rate, and that they
know other inspectors whose expense reimbursements were treated the
same way.[39]  Moreover, Plaintiffs have produced evidence showing
that some of these inspectors are interested in joining this
lawsuit.[40]

Defendant's evidence, in affidavit form,[41] states that some
inspectors are not paid on an hourly basis, and details the
differences between the varying rates for the auto allowances,
mileage reimbursements, and meal allowances among Defendant's

---

[38]     Doc. 50-3, Ex. 2 to Pls.' Mot. for Notice to Potential Class Members,
Decl. of Robert Barnard, ¶¶ 5-14;  Doc. 50-4, Ex. 3 to Pls.' Mot. for Notice to
Potential Class Members, Decl. of Bryan Ahrens, ¶¶ 5-14.

[39]     Doc. 50-3, Ex. 2 to Pls.' Mot. for Notice to Potential Class Members,
Decl. of Robert Barnard, ¶¶ 10-14;  Doc. 50-4, Ex. 3 to Pls.' Mot. for Notice to
Potential Class Members, Decl. of Bryan Ahrens, ¶¶ 10-14.

[40]     See Doc. 50-3, Ex. 2 to Pls.' Mot. for Notice to Potential Class
Members, Decl. of Robert Barnard, ¶¶ 12-15;  Doc. 50-4, Ex. 3 to Pls.' Mot. for
Notice to Potential Class Members, Decl. of Bryan Ahrens, ¶¶ 12-15.  Indeed, a
number of purported inspectors have consented to join this action.  See, e.g.,
Docs. 57-59, Consents to Join Collective Action.

[41]     See Doc. 56-1, Ex. A to Def.'s Resp. to Pls.' Mot. for Notice to
Potential Class Members, Kevin McFadden Aff.  Plaintiffs object and move to
strike this affidavit on the grounds that it "does not appear to be based on the
personal knowledge of" Kevin McFadden ("McFadden").  Doc. 64, Pls.' Objections
to Def.'s Decl. Attached to Resp., p. 2.  The personal knowledge requirement
under Rule 602 of the Federal Rules of Evidence states: "A witness may testify
to a matter only if evidence is introduced sufficient to support a finding that
the witness has personal knowledge of the matter. Evidence to prove personal
knowledge may consist of the witness's own testimony."  Fed. R. Evid. 602.  The
court finds that McFadden's affidavit meets the foundational requirements of Rule
602 and thus overrules Plaintiffs' objections.

different locations.[42]  Defendant argues that the court will have
to examine a variety of factors that can only be assessed on an
individual basis because they vary by location, vehicle, and
inspector.[43]

The court acknowledges that there may be variations among
individual employees' expenses, and that each of Defendant's
locations may have different reimbursement policies.  However,
differences among individuals and locations do not preclude the
existence of common pay plan or policy by an employer to reimburse
expenses.[44]  As discussed above, Plaintiffs have made substantial
allegations, supported by declarations, that the expense
reimbursements under the fluctuating work week and hourly methods
of compensation violated the FLSA because they were excluded from
Plaintiffs' wages, and thus from their overtime calculations.[45]

---

[42]    For example, in the Pasadena, Texas, location, inspectors get an auto
allowance of $350 a month, $25 per shift for mileage up to twenty-five miles
driven a day and $.30 for each mile after twnety-five miles. The meal allowance
is $5 a day.   At the Texas City, Texas, location, inspectors get an auto
allowance of $350, a flat rate of $15 per shift for mileage up to ten miles, and
$.30 for each mile after ten miles. Inspectors get meal allowances of $15 per
shift. See Doc. 56-1, Ex. A to Def.'s Resp. to Pls.' Mot. for Notice to Potential
Class Members, Kevin McFadden Aff., pp. 2-3.

[43]    See Doc. 56, Def.'s Resp. to Pls.' Mot. for Notice to Potential Class
Members, pp. 12-13. The variable factors identified by Defendant include the
fixed and variable costs of operating a vehicle, the cost of fuel, insurance,
maintenance, weather differences, and the mileage driven by each inspector. Id.

[44]    Indeed, at least one court in this district has held that the lack
of a common decision, policy, or plan is not fatal to conditional class
certification "as long as plaintiffs are able to show that other employees are
'similarly situated.'" Dreyer, 2008 WL 5204149 at *3.

[45]    See Doc. 50, Pls.' Mot. to Certify Class, pp. 6-10; Doc. 50-3, Ex.
2 to Pls.' Mot. for Notice to Potential Class Members, Decl. of Robert Barnard,
¶ 11; Doc. 50-4, Ex. 3 to Pls.' Mot. for Notice to Potential Class Members,
Decl. of Bryan Ahrens, ¶ 11.

Accordingly, the court thus finds that, at this stage of the proceedings, Plaintiffs have satisfactorily established the existence of a common pay practice by Defendant—the treatment of expense reimbursements—under both the hourly and fluctuating workweek methods of compensation, for conditional class certification purposes.  The specific pay practice at issue in this case is the treatment of expense reimbursements that existed under both compensation systems.[46]

Defendants argue that, if certification is granted, its scope should be limited to the locations at which Plaintiffs worked because rates for reimbursements vary from location to location. The court finds this argument unconvincing.  As previously mentioned, rate variation between locations does not preclude the existence of a common pay policy.  Individualized issues that arise later can be addressed at the second stage of the Lusardi approach, following more discovery.  Mooney, 54 F.3d at 1214.  At present, Plaintiffs are simply required to make substantial allegations, which they have done.

Therefore, the court finds that inspectors who are or were employees of Defendant in any United States location within the

---

[46]     Thus, contrary to Defendant's position, the existence of a common pay practice is not precluded by the fact that not all of Defendant's employees are paid on an hourly basis.  See Doc. 56, p. 16.

past three years,[47] were paid either under the fluctuating workweek method or the hourly basis method, received compensation in the form of an auto allowance, mileage reimbursement, or meal allowance, and who, as a result, were not compensated at a rate of one-and-a-half times their regular rate of pay for overtime work may participate in this lawsuit. Accordingly, the court **RECOMMENDS** that Plaintiffs' motion for conditional class certification be **GRANTED**.

## IV. Class Definition and Notice

Because the court finds that Plaintiffs have provided evidence demonstrating that they are similarly situated to other employees of Defendant with respect to the pay practices in question, the court **RECOMMENDS** that this matter be conditionally certified as a collective action under 29 U.S.C. § 216(b) with respect to the following class:

> Oil, Gas, and Chemical ("OGC") Inspectors who worked for Intertek USA, Inc. at any of its U.S. locations, were paid on either an hourly or fluctuating workweek basis, received compensation in the form of an auto allowance, mileage reimbursement, or meal allowance that was not part of their gross wages, and worked in excess of forty hours of overall work time in any given workweek at one-and-a-half times their regular rate during any week

---

[47]     In support of limiting the scope of the class, Defendant states that its New York office implemented an expense reimbursement plan through a collective bargaining agreement and that its offices in Alaska, California, Hawaii, Oregon, and Washington operate under a different pay system than its other offices nationwide.  However, the court has no evidence of Defendant's expense reimbursements being treated differently in those locations and thus declines to exclude them from the class at this time.

between June 10, 2008, and the present.[48]  The class
shall also include OGC inspectors who signed a release in
the <u>Adeva</u> lawsuit, provided they meet the above
requirements.[49]

If any current or former employees other than OGC inspectors, as

defined in the class, wish to proceed on a claim for overtime

compensation under the FLSA, they must file a separate lawsuit.

See <u>Baldridge v. SBC Commc'ns, Inc.</u>, 404 F.3d 930, 931-32 (5th Cir.

2005) (stating that the court has the power to limit the scope of

a proposed class in a FLSA collective action).

Accordingly, if this Recommendation is adopted, Defendant

shall provide counsel for Plaintiffs with the names, positions,

dates of employment, current or last known addresses (work and

home), all work telephone numbers, and all work email addresses for

current and former employees fitting the description of the

conditionally certified class.  Defendant shall provide such

information in a computer-readable format within fourteen (14) days

of the date this Recommendation is adopted.  Defendant is not

required to produce the dates of birth, personal email addresses,

or personal and home phone numbers of potential plaintiffs at this

time.  However, Plaintiffs may seek discovery of this personal

information upon a showing to the court that a given potential

---

[48]    <u>See</u> Doc. 50, Pls.' Mot. to Certify Class, pp. 5, 8-11.

[49]    <u>See</u> Doc. 50, Pls.' Mot. to Certify Class, p. 4.  Plaintiffs contend
that the release of claims executed by plaintiffs in the <u>Adeva</u> case does not
preclude the litigation of claims that accrued after the date of the release.
<u>See</u> <u>id.</u>  Because Defendant has offered no argument to the contrary, the court
shall permit such potential plaintiffs to join this action.

plaintiff could not be reached by the means permitted above.

Having examined Plaintiffs' proposed notice and consent forms and considered Defendant's objections, the court finds that, with the exception of the removal of a superfluous "is" at the beginning of paragraph three of the proposed notice form, and the inclusion of appropriate dates, Plaintiffs' notice and consent forms shall remain unaltered and issue to proposed class members.[50]

Plaintiffs' counsel shall mail a copy of the notice and consent forms attached to their motion, with the required changes, via regular United States mail and/or via electronic mail to all persons contained on the list within fourteen (14) days of receiving the list from Defendant. Plaintiffs' counsel shall also include a self-addressed stamped envelope in the mailing. The potential class members shall have sixty (60) days from the date of the mailing of the notice to file their consent opting into this lawsuit as plaintiffs, unless good cause can be shown as to why the consent was not postmarked prior to the deadline.

Defendant is hereby prohibited from communicating, directly or indirectly, with any current or former hourly or fluctuating-workweek employees about any matters which touch or concern the settlement of any outstanding wage claims, or other matters related to this suit, during the opt-in period. Defendant shall so instruct all of its managers. This order shall not restrict

---

[50]   See Doc. 51-9, Ex. 19 to Pls.' Mot. to Certify Class, Proposed Notice of Rights.

Defendant from discussing with any current employee matters that arise in the normal course of business.

## V. CONCLUSION

Accordingly, the court **RECOMMENDS** that Plaintiff's Motion for Notice to Potential Class Members be **GRANTED**.  The court also **OVERRULES** Plaintiffs' Objections to Defendant's Response in Opposition to Motion to Certify Class.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen (14) days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.  The original of any written objections shall be filed with the United States District Clerk electronically.

**SIGNED** in Houston, Texas, this 2nd  day of May, 2012.

Nancy K. Johnson
United States Magistrate Judge

23