IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |   |
|---|---|---|
| ROBERT BARNARD and BRYAN AHRENS, on Behalf of Themselves and on Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION NO. H-11-2198 |
| INTERTEK USA INC. D/B/A/ INTERTEK CALEB BRETT, | § § § | |
| Defendant. | § § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant's Motion for Summary Judgment, or, in the Alternative, for Partial Summary Judgment (Doc. 33).  The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **DENIED**.

### I.  Case Background

Plaintiffs filed this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., against Defendant Intertek Caleb Brett ("Defendant"), alleging that Defendant denied them overtime pay at the federally mandated rate.  Plaintiffs assert that the policies maintained by Defendant, which denied them overtime pay, also affected other employees in similar positions.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 37.

## A.  <u>Factual History</u>

Defendant is engaged in the business of providing "laboratory testing, laboratory outsourcing, cargo inspection, and certification services for clients on a global basis."[2]  In order to provide these services, Defendant employed Plaintiffs as Oil, Gas, and Chemical Inspectors ("inspectors").[3]  Because Plaintiffs were not exempted from the overtime and minimum-wage requirements of the FLSA, Defendant was required to compensate Plaintiffs with overtime pay for each hour worked over forty in a given week.[4]

Defendant initially utilized a fluctuating workweek ("FWW") method of compensation, dating to the early 1980s, to pay its employees.[5]  Under the FWW compensation method, inspectors "received the same base salary each week, regardless of the number of hours worked."[6]  The regular rate of pay was determined by dividing the weekly base salary by the total number of hours worked each week.[7]  According to Defendant, "[a]ll inspectors' salaries

---

[2]   <u>See</u> Doc. 43, Pls.' 1st Am. Compl., ¶ 18.

[3]   Plaintiffs' first amended complaint originally indicated that other employees, such as dispatchers, were potential plaintiffs.  <u>See</u> <u>id.</u> ¶ 38. Plaintiffs' class certification motion, however, limited the potential class to inspectors.  <u>See</u> Doc. 50, Pls.' Mot. for Notice to Potential Class Members, p. 4.

[4]   <u>See</u> Doc. 43, Pls.' 1st Am. Compl., ¶ 69.

[5]   <u>See</u> Doc. 33-1, Ex. 1 to Def.'s Mot. for Summ. J., Q Vanbenschoten Aff., ¶ 3.

[6]   <u>Id.</u> ¶ 8.

[7]   <u>See</u> Doc. 33-2, Ex. 2 to Def.'s Mot. for Summ. J., Fluctuating Compensation Forms.

were sufficiently large to assure that no inspector's average hourly earnings from the salary fell below the minimum hourly wage rate."[8] Overtime pay was calculated as one-half times the aforementioned regular rate for each hour worked over forty in a given week.[9]

Also under the FWW method of compensation, inspectors were eligible to receive premium payments, such as "Day-Off Pay" when they were required to work on their day off, "Off-Shore Pay" when they were required to travel on navigable waters to perform an inspection, and "Holiday Pay" when they worked on holidays.[10] These premium payments, when received, were incorporated into the inspectors' regular rate of pay.[11] Since at least 1998, inspectors additionally received a daily "meal allowance" and an "auto allowance," as well as mileage reimbursements.[12]

The mileage reimbursements were issued by Defendant's Accounts Payable department at a cents-per-mile rate that was inclusive of all travel-related expenses.[13]   The auto allowance was issued by

---

[8]   Doc. 33-1, Ex. 1 to Def.'s Mot. for Summ. J., Q Vanbenschoten Aff., ¶ 8.

[9]   See Doc. 33-2, Ex. 2 to Def.'s Mot. for Summ. J., Fluctuating Compensation Forms.

[10]   See Doc. 33-1, Ex. 1 to Def.'s Mot. for Summ. J., Q Vanbenschoten Aff., ¶ 10.

[11]   See id.

[12]   See Doc. 94-3, Ex. 2 to Pls.' Resp. to Def.'s Mot. for Summ. J., Q Vanbenschoten Depo., pp. 24-25, 51.

[13]   See id. at pp. 38-39.

Defendant's Human Resources department ("HR") and consisted of a fixed amount "intended to cover the mileage, the wear and tear, et cetera, on [the inspectors'] vehicle for use in doing [Defendant's] business."[14]  Inspectors were initially required to submit mileage records to HR to receive the auto allowance.[15]  If the mileage was less than the amount covered by the auto allowance, some of the allowance was considered taxable and that taxable amount was then deducted from the inspector's next paycheck.[16]  Pursuant to the policies set forth in Defendant's Employee Handbook, "[e]mployees may receive either the Auto Allowance or Mileage Reimbursement . . . ."[17]  In special circumstances, however, an employee could potentially receive both an auto allowance and a mileage reimbursement.[18]

In 1998, Defendant submitted its FWW policy to legal counsel for review and was informed that the FWW policy complied with the FLSA.[19]  The next year, Defendant updated the language of its FWW policy, specifically noting the applicable federal regulation

---

[14]    Id. at p. 30.

[15]    See id. at pp. 50-51.

[16]    See id. at p. 51.

[17]    Doc. 94-5, Ex. 4 to Pls.' Resp. to Def.'s Mot. for Summ. J., Def.'s Employee Handbook, p. 17.

[18]    See Doc. 94-3, Ex. 2 to Pls.' Resp. to Def.'s Mot. for Summ. J., Q Vanbenschoten Depo., pp. 39-42.

[19]    See Doc. 33-1, Ex. 1 to Def.'s Mot. for Summ. J., Q Vanbenschoten Aff., ¶ 2.

4

governing FWW compensation models.[20]

Seven years later, in 2005, Defendant was audited by the New Jersey State Department of Labor and Workforce Development ("NJDOL").[21]   As part of the audit, Defendant produced documents concerning its pay practices, including its use of the FWW compensation method.[22]   The NJDOL's audit uncovered no violations, except with regard to Defendant's payroll timing, which was inconsistent with a New Jersey law requiring Defendant to pay wages within ten days of the end of the relevant pay period.[23]   That same year, Defendant eliminated the requirement that inspectors produce documentation of their mileage to receive the auto allowance, paid the auto allowance to all inspectors regardless of mileage, and taxed the entire allowance.[24]   Further, Defendant opted to raise the amount of the auto allowance nationwide from $300 to $350 per month.[25]   No studies or reports were conducted or evaluated in determining the amount of the auto allowance.[26]

Sometime thereafter, in 2005 or 2006, Defendant learned of

---

[20]      See id.

[21]      See id. ¶ 2.

[22]      See id.

[23]      See id.

[24]      See Doc. 94-3, Ex. 2 to Pls.' Resp. to Def.'s Mot. for Summ. J., Q Vanbenschoten Depo., pp. 51-52.

[25]      See Doc. 94-6, Ex. 5 to Pls.' Resp. to Def.'s Mot. for Summ. J., Kevin McFadden Depo., pp. 82-84.

[26]      See id. at pp. 83, 109-10.

lawsuits challenging the FWW compensation method of a competitor.[27] Defendant then consulted with its attorneys to determine whether its FWW pay practices complied with the applicable provisions of the FLSA.[28]   Because Defendant's attorneys subsequently advised Defendant that it was in compliance with the FLSA, Defendant maintained its pay practices.[29]   In 2007, Defendant learned that summary judgment had been granted against its competitor with respect to the FWW challenge, and therefore consulted its attorneys about its own pay practices.[30]   Defendant was again advised by counsel that its pay practices complied with the FLSA and differed materially from the practices deemed unlawful in the lawsuit against its competitor.[31]   Additionally, in July 2008, revisions proposed by the Department of Labor ("DOL") to the sections of the FLSA governing the FWW method of compensation led Defendant to conclude that its pay practices under the FWW method of compensation were consistent with the DOL's interpretation of the FWW method.[32]

---

[27]   See Doc. 33-1, Ex. 1 to Def.'s Mot. for Summ. J., Q Vanbenschoten Aff., ¶ 5.

[28]   See id.

[29]   See id.

[30]   See id. ¶ 6.

[31]   See id.

[32]   See id. ¶ 7.  The proposed revisions clarified 29 C.F.R. § 778.114 by expressly permitting the payment of bonuses and premium payments under the FWW compensation method.  See Updating Regulations Issued Under the Fair Labor Standards Act, 73 Fed. Reg. 43654-01, 43662, 43665 (Dep't of Labor July 28, 2008); 29 C.F.R. § 778.114 (governing the FWW method of calculating overtime

In May 2009, Defendant stopped providing premium payments to its inspectors, but continued to provide an auto allowance, a meal allowance, and mileage reimbursements.[33]  Defendant received a memorandum from legal counsel, dated June 8, 2009, which addressed Defendant's payment of the auto allowance to its employees.[34] Citing FLSA law regarding expense reimbursements, the memorandum noted that:

> Assuming the $4200 amount reasonably approximates the actual costs of [the employees'] car travel, it is not wages and does not need to be included in the regular rate because the travel expenses are incurred by the employee in the furtherance of his employer's interest.[35]

Defendant understood this memorandum to endorse its pay practices with respect to the auto allowance and to establish that the auto allowance did not constitute wages for purposes of the FLSA.[36]

Approximately a year and a half later, in January 2010, Defendant's use of the FWW method, with regards to bonus and premium payments, was found to be in violation of the FLSA by the United States District Court for the District of New Jersey in Adeva v. Intertek USA, Inc., No. 09-1096(SRC), slip op., 2010 WL

---

pay).

[33]    See Doc. 33-1, Ex. 1 to Def.'s Mot. for Summ. J., Q Vanbenschoten Aff., ¶ 10.

[34]    See Doc. 94-7, Ex. 6 to Pls.' Resp. to Def.'s Mot. for Summ. J., Legal Mem. Dated June 8, 2009.

[35]    Id. at p. 3.

[36]    See Doc. 94-3, Ex. 2 to Pls.' Resp. to Def.'s Mot. for Summ. J., Q Vanbenschoten Depo., pp. 71, 77.

97991 (D.N.J. Jan. 11, 2010).  In Adeva, the court also found that,
given Defendant's conduct in seeking outside counsel to approve its
conduct, as well as the lack of binding legal authority regarding
premium payments under the FWW method, Defendant had "acted in good
faith and had reasonable grounds for believing [it] was not in
violation of the FLSA."  2010 WL 97991 at *4.

**B.  Procedural History**

Plaintiffs filed this lawsuit against Defendant on June 10,
2011, alleging violations of the FLSA.[37]   Defendant filed the
pending motion for summary judgment, or, in the alternative, for
partial summary judgment on October 18, 2011.[38]   In its motion,
Defendant argued that: (1) Plaintiffs who had signed releases in
the Adeva lawsuit must be dismissed; (2) its implementation of the
FWW method complied with FLSA in that no employee's average hourly
earnings fell below the mandated minimum wage and Defendant and its
employees had a clear mutual understanding of the FWW compensation
method; (3) it did not willfully violate the FLSA, and, therefore
the applicable statute of limitations is two years; and (4) it
acted with good faith in implementing its FWW pay practices, thus
precluding Plaintiffs' recovery of liquidated damages.

Plaintiffs moved for, and were granted, a continuance to
respond to Defendant's motion for summary judgment so that they

---

[37]   See Doc. 1, Pls.' Orig. Compl.; Doc. 13, Def.'s Ans.

[38]   See Doc. 33, Def.'s Mot. for Summ. J.

could conduct more discovery.[39]   On unopposed motion, the court granted leave for Plaintiffs to amend their complaint on November 7, 2011.[40]  That same day, Plaintiffs filed their amended complaint, alleging violations of Sections 206, 207, and 211(c) of the FLSA, and contending for the first time that Defendant's auto allowance, meal allowance, and mileage reimbursement payments to employees should have been considered wages for purposes of calculating employees' overtime rates.[41]   Plaintiffs also asserted collective action allegations and allegations that estoppel precluded Defendant from claiming that the "auto allowance" did not constitute wages.[42]

Eleven days later, on November 18, 2011, Defendant answered Plaintiffs' amended complaint and filed a motion to dismiss.[43]   On November 23, 2011, Plaintiffs filed a motion to certify a collective class.[44]  Plaintiffs responded to Defendant's motion to dismiss on December 9, 2011, and Defendant responded to Plaintiff's

---

[39]    See Doc. 38, Pls.' Mot. for Continuance of Def.'s Mot. for Summ. J.; Doc. 41, Def.'s Resp. to Pls.' Mot. for Continuance of Def.'s Mot. for Summ. J.; Doc. 39, Notice of Setting of Hearing on Pls.' Mot. for Continuance of Def.'s Mot. for Summ. J.

[40]    See Doc. 42, Order Granting Pls.' Mot. for Leave to File Am. Compl.; see also Doc. 40, Pls.' Unopp. Mot. for Leave to File Am. Compl.

[41]    See Doc. 43, Pls.' 1st Am. Compl.

[42]    See id. ¶¶ 64-88.

[43]    See Doc. 48, Def.'s Ans. to Pls.' 1st Am. Compl.; Doc. 47, Def.'s Mot. to Dismiss.

[44]    See Doc. 50, Pls.' Mot. to Certify Class.

motion to certify a collective class on December 14, 2011.[45]   The
court denied Defendant's motion to dismiss and granted Plaintiffs'
motion to certify a collective class.[46]

On April 2, 2012, Plaintiffs filed a response to Defendant's
pending motion for summary judgment, to which Defendant replied
eleven days later, on April 13, 2012.[47]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.
2003).  A material fact is a fact that is identified by applicable
substantive law as critical to the outcome of the suit.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th
Cir. 2001).  To be genuine, the dispute regarding a material fact
must be supported by evidence such that a reasonable jury could

---

[45]    See Doc. 54, Pls.' Resp. to Def.'s Mot. to Dismiss; Doc. 56, Def.'s
Resp. to Pls.' Mot. to Certify Class; see also Doc. 60, Def.'s Reply in Support
of Def.'s Mot. to Dismiss; Doc. 63, Pls.' Reply to Def.'s Resp. to Pls.' Mot. to
Certify Class; Doc. 79, Pls.' Supp. Reply to Def.'s Resp. to Pls.' Mot. to Cerify
Class; Doc. 82, Def.'s Surreply to Pls.' Mot. to Certify Class.

[46]    See Doc. 88, Mem. & Recommendation Dated Mar. 7, 2012; Doc. 91, Order
Adopting Mem. & Recommendation; Doc. 99, Mem., Recommendation, & Order Dated May
2, 2012; Doc. 109, Order Adopting Mem., Recommendation, & Order.

[47]    See Doc. 94, Pls.' Resp. to Def.'s Mot. for Summ. J.; Doc. 96, Def.'s
Reply in Support of Mot. for Summ. J.

resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore

11

v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III.  Analysis

As noted above, Defendant moved for summary judgment on the following grounds: (1) Plaintiffs who had signed forms releasing claims against Defendant in the Adeva lawsuit should be dismissed; (2) Defendant's implementation of the FWW method complied with FLSA in that no employee's average hourly earnings fell below the mandated minimum wage and that Defendant and its employees had a clear mutual understanding of the FWW compensation method; (3) Defendant did not willfully violate the FLSA, and, therefore, the applicable statute of limitations is two years; and (4) Defendant acted with good faith in implementing its FWW pay practices, thus

precluding Plaintiffs' recovery of liquidated damages.

The parties have since stipulated that individuals who signed a release in the _Adeva_ case would be limited to damages arising from FLSA violations that occurred after the date of the release.[48] Because Plaintiffs have dismissed those putative plaintiffs who had signed a release in the _Adeva_ case after their employment with Defendant had ended, the court finds that Defendant's argument regarding the _Adeva_ releases is **MOOT**.[49]

Defendant's second ground for summary judgment, that its implementation of the FWW method of compensation complied with the FLSA because no employee's average hourly earnings fell below the mandated minimum wage and because Defendant and its employees had a clear mutual understanding of the FWW method, is based on the allegations set forth in Plaintiffs' original complaint.  However, Plaintiffs filed an amended complaint about three weeks after Defendant's motion for summary judgment, alleging new theories of liability.  Specifically, Plaintiffs claimed that the auto allowance, meal allowance, and/or mileage reimbursement paid by Defendant to its employees constituted wages that should have been

---

[48]    _See_ Doc. 94-2, Ex. 1 to Pls.' Resp. to Def.'s Mot. for Summ. J., Feb. 17, 2012 H'rg Tr., p. 33.

[49]    In its reply in support of the motion for summary judgment, Defendant complains that, despite Defendant's request and Plaintiffs' agreement to comply, Plaintiffs failed to dismiss four putative plaintiffs whose claims were barred as a result of the _Adeva_ release.  _See_ Doc. 96, Def.'s Reply in Support of Mot. for Summ. J., p. 16.  The four putative plaintiffs identified in that reply have since been dismissed from the case.  _See_ Doc. 111, Or. of Dismissal Dated June 12, 2012; Doc. 114, Or. Granting Stip. of Dismissal Dated June 26, 2012.

included in determining Plaintiffs' overtime rate.  Defendant did not, for obvious reasons, address these payments in its motion and therefore cannot meet its summary judgment burden as to its second ground for summary judgment.  Indeed, Defendant appears to have abandoned its position regarding this issue in its reply in support of the pending motion, wherein Defendant stated that, notwithstanding Plaintiff's new theories, "the record nevertheless shows [Defendant] reasonably relied on advice from counsel and that it, at all times, acted in good faith and did not willfully violate the [FLSA]."[50]  Given the above, the court should deny summary judgment as to this ground.

The remaining summary judgment issues before the court for consideration are Defendant's arguments that: (1) the applicable statute of limitations is two years because Defendant's conduct, if in violation of the FLSA, was not willful; and (2) Defendant acted in good faith in implementing its FWW pay practices, thus precluding Plaintiffs' recovery of liquidated damages.  The court turns to the merits of Defendant's remaining arguments.

**A.  <u>Willfulness</u>**

Under the FLSA, individuals raising a cause of action for unpaid overtime compensation must generally commence the action within two years of the alleged violation.  29 U.S.C. § 255(a).[51]

---

[50]   Doc. 96, Def.'s Reply in Support of Motion for Summ. J., p. 3.

[51]   The applicable statute of limitations was added to the FLSA through enactment of the Portal-to-Portal Pay Act, 29 U.S.C. §§ 251 <u>et seq</u>.

If, however, the cause of action arises out of a willful violation, the action may be brought within three years of the violation. Id. A willful violation arises when the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]. . . ." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); see Reich v. Bay, Inc., 23 F.3d 110, 117 (5th Cir. 1994). Plaintiffs bear the burden of proving willfulness. See Cox v. Brookshire Grocery Co., 919 F.2d 354, 356 (5th Cir. 1990).

A willful violation does not occur where an employer acted "unreasonably, but not recklessly, in determining its obligation." Richland Shoe Co., 486 U.S. at 134 n. 13; Chicca v. St. Luke's Episcopal Health Sys., __ F. Supp. 2d. __, 2012 WL 844899, at *12 (S.D. Tex. Mar. 12, 2012) (quoting Richland Shoe Co., 486 U.S. at 133). Although an employer's failure to obtain legal advice regarding FLSA compliance does not itself establish willfulness, "[r]eliance on the advice of counsel does not foreclose the possibility that a violation is 'willful'." McCumber v. Eye Care Ctr. of Am., Inc., 2011 WL 1542671, at *13 (M.D. La. Apr. 20, 2011); see Mireles v. Frio Foods, Inc., 899 F.2d 1407, 1416 (5th Cir. 1990). Whether a violation is willful is a question of fact reserved for the finder of fact. See Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ., 579 F.3d 546, 553 (5th Cir. 2009) ("Because willfulness is a question of fact, summary judgment in

favor of the employer is inappropriate if the plaintiff has introduced evidence sufficient to support a finding of willfulness."); <u>Reich v. Tiller Helicopter Servs., Inc.</u>, 8 F.3d 1018, 1036 (5th Cir. 1993); <u>Karr v. City of Beaumont, Tex.</u>, 950 F. Supp. 1317, 1325 (E.D. Tex. 1997).

Here, Defendant contends that Plaintiffs have failed to produce any evidence of willfulness. In response, Plaintiffs argue that Defendant's failure to determine whether its auto allowance, meal allowance, and mileage reimbursement payments were reasonable in amount as related to the actual expenses incurred by Plaintiffs, and therefore properly excluded from the employees' wages constitutes willfulness. <u>See</u> 29 C.F.R. § 778.217(c) (only the "actual or reasonably approximate amount" of a reimbursed expense paid to an employee for expenses incurred on the employer's behalf may be excluded from an employee's regular rate of pay). Supporting their position, Plaintiffs cite deposition testimony and a legal memorandum provided to Defendant by its attorneys regarding the auto allowance.

The court finds <u>McCumber</u> instructive to the present case. In <u>McCumber</u>, the employer obtained legal advice regarding its classification of the plaintiff's job position as exempt from FLSA coverage. <u>See</u> 2011 WL 1542671, at *13. The employer was advised in a letter from its attorneys that there was a "good faith basis" for classifying the plaintiff's position as exempt, but was also warned

16

that the plaintiff's job description was not controlling on the issue of exemption. <u>Id.</u> The court found that the employer was aware, based on the advice it received from counsel, that the plaintiff's position could be considered nonexempt in some instances under the FLSA. <u>Id.</u> That the employer had sought legal advice did not foreclose the possibility of a willful violation. <u>Id.</u>

In this case, Plaintiffs contend that the memorandum received by Defendant from its attorneys regarding the auto allowance informed Defendant of the FLSA requirement that, in order to be excluded from the employees' regular rate of pay, the amount of the auto allowance must reasonably approximate the actual cost of the expenses incurred by the employee. <u>See</u> 29 C.F.R. § 778.217(c). Although the memorandum from Defendant's attorneys states that "Car Allowances need not be included in the regular rate," this conclusion was premised on the assumption that the amount of the auto allowance "reasonably approximates the actual costs of their car travel . . . ."[52] Further, Plaintiffs have produced competent summary judgment evidence, in the form of deposition testimony, that Defendant was familiar with the FLSA and that it did not take any action to determine whether the auto allowance reasonably approximated the employees' actual expenses after receiving the

---

[52]     Doc. 94-7, Ex. 6 to Pls.' Resp. to Def.'s Mot. for Summ. J., Legal Mem. Dated June 8, 2009, pp. 1, 3.

letter from its attorneys.[53]  The evidence also indicated that Defendant similarly took no action to determine whether the meal allowance was reasonable in amount or constituted wages under the FLSA.[54]

In response, Defendant claims that the memorandum it received from its attorneys is distinguishable from the legal advice received by the employer in <u>McCumber</u> because the memorandum here did not explicitly warn Defendant of a possible violation of the FLSA.  The court agrees with Defendant that the memorandum from counsel was not as overt regarding potential FLSA violations as was the legal advice received by the employer in <u>McCumber</u>.  However, considering the evidence in the light most favorable to the non-moving party, the court finds that a reasonable jury could conclude that, given Defendant's familiarity with the FLSA and the memorandum from its attorneys, Defendant knew that the amount of the auto allowance must reasonably approximate the actual cost of expenses incurred, and that Defendant's failure to determine whether that requirement was satisfied constituted willful conduct.

Defendant also cites to deposition testimony, as well as the results of the NJDOL's audit in 2005, to support its arguments in

---

[53]    <u>See</u> Doc. 94-3, Ex. 2 to Pls.' Resp. to Def.'s Mot. for Summ. J., Q Vanbenschoten Depo., pp. 60-62, 90-91; Doc. 94-6, Ex. 5 to Pls.' Resp. to Def.'s Mot. for Summ. J., Kevin McFadden Aff., pp. 93-94, 109-10; <u>see also</u> Doc. 33-1, Ex. A to Def.'s Mot. for Summ. J., Q Vanbenschoten Aff., ¶ 11 ("During my time as Director, Human Resources, I stayed abreast of developments in labor and employment law . . .").

[54]    <u>See</u> Doc. 94-3, Ex. 2 to Pls.' Resp. to Def.'s Mot. for Summ. J., Q Vanbenschoten Depo., pp. 110-11.

favor of summary judgment on the issue of willfulness. Specifically, Defendant directs the court's attention to the following deposition testimony as indicating that the auto allowance reasonably approximated the actual costs incurred by its employees: (1) about ninety-eight percent of the mileage sheets received by Defendant's representative in 1998 "met or exceeded the auto allowance amount";[55] and (2) union negotiations regarding the auto allowance in New Jersey addressed employees' claims that the allowance should be increased given an increase in gas prices.[56] Although this evidence generally supports Defendant's position that it did not engage in willful conduct in implementing its FWW compensation method, Plaintiffs' evidence has raised a material question of fact with respect to Defendant's willfulness, as discussed above. The determination regarding Defendant's willfulness is therefore reserved for the trier of fact and summary judgment should accordingly be denied on the issue of willfulness.

**B.  <u>Good Faith</u>**

Defendant also moves for summary judgment on its claim that it acted in good faith and had a reasonable belief that its pay practices complied with the FLSA. An employer bears a "substantial burden" in establishing good faith and reasonable grounds for its

---

[55]    <u>Id.</u> at p. 74.

[56]    <u>See</u> <u>id.</u> at p. 37.  Defendant did not cite any competent summary judgment evidence specifically regarding whether the amount of the meal allowance or mileage reimbursement reasonably approximated the actual costs incurred by its employees.

belief that it was in compliance with the FLSA.  <u>Stokes v. BWXT</u>
<u>Pantex, L.L.C.</u>, 424 Fed. App'x 324, 326 (5th Cir. 2011) (citing
<u>Bernard v. IBP, Inc. of Neb.</u>, 154 F.3d 259, 267 (5th Cir. 1998)).
Good faith requires a subjective showing by the employer that it
"had an honest intention to ascertain what the Act requires and to
act in accordance with it."  <u>Brantley v. Inspectorate America</u>
<u>Corp.</u>, 821 F. Supp. 2d 879, 895 (S.D. Tex. 2011) (quoting <u>Dybach v.</u>
<u>State of Fla. Dept. of Corrections</u>, 942 F.2d 1562, 1566 (11th Cir.
1991)); <u>see</u> <u>Barcellona v. Tiffany English Pub, Inc.</u>, 597 F.2d 464,
469 (5th Cir. 1979) ("good faith requires some duty to investigate
potential liability under the FLSA.").  The reasonableness of an
employer's conduct with respect to a potential FLSA violation is
evaluated as an objective standard.  <u>See</u> <u>Brock v. El Paso Natural</u>
<u>Gas Co.</u>, 826 F.2d 369, 371 (5th Cir. 1987); <u>Brantley</u>, 821 F. Supp.
2d, at 895.  If an employer satisfies its burden, the court has
discretion to deny otherwise mandatory liquidated damages against
the employer.  <u>See</u> 29 U.S.C. § 260.

In order to establish good faith and a reasonable basis for
its conduct, Defendant cites to: (1) its seeking of legal advice
regarding the auto allowance and the memorandum it received in
response; (2) the absence of legal challenges to its pay practices
over twenty-five years prior to the <u>Adeva</u> lawsuit; and (3) the 2005
NJDOL audit which did not find fault with Defendant's pay practices
under its FWW compensation method.  The court considers Defendant's

evidence of good faith, to which Plaintiffs did not directly respond

Regarding the legal memorandum received by Defendant from its attorneys in 2009, the court finds that Plaintiffs' evidence on willfulness is relevant to Defendant's claim of good faith.  As discussed above, the memorandum's conclusion that "Car Allowances need not be included in the regular rate," was premised on the assumption that the amount of the auto allowance reasonably approximated the actual expenses incurred by the employees.[57]  The memorandum thus did not definitively answer whether Defendant's exclusion of the allowance from wages violated the FLSA.  Defendant nonetheless interpreted this conditional conclusion as an endorsement of its auto allowance payments and accordingly took no further steps, at any point, to determine whether the auto allowance amount reasonably approximated the actual expenses.[58]  The court finds that given Defendant's conduct following the receipt of the memorandum regarding its auto allowance, as well as the question of fact raised by Plaintiffs as to willfulness, Defendant cannot carry its burden of showing both subjective good faith and objective reasonableness as a matter of law.

With respect to Defendant's remaining factors showing good

---

[57]     Doc. 94-7, Ex. 6 to Pls.' Resp. to Def.'s Mot. for Summ. J., Legal Mem. Dated June 8, 2009, p. 1.

[58]     See Doc. 94-3, Ex. 2 to Pls.' Resp. to Def.'s Mot. for Summ. J., Q Vanbenschoten Depo., p. 71.

faith, the court is unpersuaded by, and Defendant has provided no case law in support of, the implication that the absence of challenges to the legality of Defendant's pay practices during a period of at least twenty-five years prior to the Adeva lawsuit, satisfies its substantial burden of showing good faith under the FLSA.  Further, although Defendant's reliance on the NJDOL's 2005 audit may constitute evidence of good faith, it does not establish as a matter of law that, following the receipt of the letter from its attorneys in 2009, it acted in good faith and on a reasonable basis with respect to its payments to employees under the FWW method of compensation.

The court therefore recommends that Defendant's motion for summary judgment on the issue of good faith be denied.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment, or, in the Alternative, for Partial Summary Judgment be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this $\underline{2^{nd}}$  day of August, 2012.

Nancy K. Johnson
United States Magistrate Judge