UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT BARNARD and BRYAN AHRENS, on Behalf of Themselves and on Behalf of All Others Similarly Situated, Plaintiffs, | § § § § § | CIVIL ACTION NO. 4:11-cv-02198 |
| V. | § § § | JURY TRIAL DEMANDED |
| INTERTEK USA INC D/B/A INTERTEK CALEB BRETT, Defendant. | § § § § | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Plaintiffs Robert Barnard, Bryan Ahrens, Kenneth Vordenbaum, and Patrick Cary ("Representative Plaintiffs") individually and on behalf of all others Opt-in Plaintiffs and Intertek USA Inc. d/b/a Intertek Caleb Brett ("Intertek" or "Defendant") (collectively the "Parties") file this Joint Motion for Approval of Settlement Agreement. In support thereof, the Parties would respectfully show the court as follows:

**I.      Legal standard.**

The parties seek approval of a settlement under section 216(b) of the FLSA. The Settlement Agreement, filed under seal, is attached hereto as Exhibit 1.[1] This matter does not relate to a settlement of a "class action" under Rule 23. Consequently, the settlement affects only the individuals who have affirmatively opted into the case and are represented by Plaintiffs' counsel. The settlement does not affect the rights of any non-parties. When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th

---

[1] The Parties have filed a separate Motion to File the Settlement Agreement Under Seal.

Cir. 1982). The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

The parties jointly ask the Court to:

1. Sign the proposed Order Approving the Settlement Agreement, attached hereto as Exhibit 2.

2. Sign the proposed Order Dismissing this claim with Prejudice as to all Plaintiffs who execute a Release and without prejudice as to all Plaintiffs who do not execute a Release, attached here to as Exhibit 3.[2]

## II.  Background.

On June 10, 2011, Plaintiffs Robert Barnard and Bryan Ahrens filed a putative collective action lawsuit (Doc. 1) under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA") alleging that Defendant failed to pay wages as required by law. Plaintiffs filed their First Amended Complaint (Doc. 43) on November 7, 2011, which added Kenneth Vordenbaum, and Patrick Cary as Class Representatives. In the First Amended Complaint, Plaintiffs alleged that Defendant violated the FLSA by not properly calculating oil and gas inspectors and dispatchers' overtime pay.

---

[2] For clarification purposes, the Settlement Agreement itself contains four exhibits: (A) The Joint Request for Approval of Settlement and a Proposed Order Granting same; (B) Joint Motion to File Confidential Settlement Agreement and the Motion to Approve the Agreement under Seal; (C) Proposed Order Dismissing this Case with Prejudice; and (D) List of Plaintiffs with each Plaintiff's contact information and share of Settlement Fund. However, the parties have filed as separate exhibits to this Motion the two Orders they request the court to sign: (1) Proposed Order Approving Settlement Agreement and (2) Proposed Order Dismissing this Lawsuit with Prejudice.

On May 4, 2012, this Court (Doc. 99) entered an Order conditionally certifying this matter as a collective action and authorizing notice to be mailed to a defined group of Defendant's employees. After notice was mailed pursuant to the Court's order, the employees listed on Exhibit A to the Settlement Agreement joined and remained part of the lawsuit and are part of the settlement.

Before and after the notice was mailed, the Parties engaged in extensive discovery. As the Court is aware, this was a hard-fought wage and hour collective lawsuit with serious disagreements over both legal and factual issues. Plaintiffs and their counsel responded to more than 600 sets of written discovery. Approximately seven plaintiffs, including all the Class Representatives, appeared for their depositions and many more were scheduled and being scheduled at the time the parties reached their settlement agreement. These depositions took place in Houston, Corpus Christi and Baton Rouge, Louisiana. Plaintiffs also took the deposition of key management witnesses, including Defendant's human resources manager (Q VanBenschoten), Vice President of North American Operations (Kevin McFadden) and former Vice President of Human Resources (Richard Huntley). The parties exchanged tens of thousands of documents, including payroll records, time records, company guidelines, declarations, expense vouchers, employee handbooks and other documents.

Defendant filed a Motion to Dismiss and a Motion for Summary Judgment to which Plaintiffs responded after conducting limited discovery. The court denied both of Defendant's Motions. At the time the parties reached their settlement, Plaintiffs had filed a Motion for Partial Summary Judgment. The parties worked together on virtually all discovery issues and when they disagreed on the scope of discovery both sides filed Motions to Compel with the Court. In short, both side performed substantial work on this case prior to reaching their settlement agreement.

Both parties retained nationally recognized economists to assist in calculating the alleged damages that would be owed to Plaintiffs in the event of liability based on the electronic data produced by Defendant. The Parties attended mediation with Gloria Portela, a Houston mediator with extensive experience in FLSA collective action lawsuits, in February 2013. Class Representatives were present during the full-day mediation. Defendant's counsel and Mr. McFadden were also present at the mediation. The parties made progress toward settlement, but ultimately reached an impasse. The parties then conducted additional discovery and had candid discussions regarding the respective merits of their claims. In September 2013, the parties attended a second mediation, which resulted in a settlement. The parties now request approval of their settlement agreement.

## II. The settlement is fair and reasonable resolution of a bona fide dispute.

### A. A bona fide dispute existed between the parties.

If Plaintiffs' allegations were ultimately correct, Defendant would be faced with the prospect of a substantial monetary judgment in favor of Plaintiffs as well as an obligation to pay litigation fees and costs incurred by Plaintiffs. If Defendant's arguments were correct, then Plaintiffs would not have made a recovery or the recovery would have been substantially less than what Plaintiffs sought. The parties on both sides were represented by able counsel throughout this litigation. Each side aggressively litigated its positions, as outlined in the historical review of the case above. The parties ask the Court to take judicial notice of the docket, which reflects some of the work performed by the parties and demonstrates there existed a bona fide dispute regarding both whether compensation was owed and the amount, if any, owed. Accordingly, the Court should readily conclude a bona fide dispute between the Parties existed under the FLSA.

### B. The proposed settlement is fair and reasonable.

The precise terms of the settlement agreement are filed under seal with the Court. The Settlement was the product of arm's-length negotiations by experienced counsel and has the salutary effect of (1) providing substantial relief to the Plaintiffs and (2) eliminating the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Such negotiations allowed the Parties to bridge the significant gap between the Parties' settlement positions and obtain the resolution described. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing Courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

The Settlement Agreement is also fair and reasonable because substantial obstacles exist if litigation continues and the settlement provides substantial and immediate relief. The Parties disagree about the merits of Plaintiffs' claims, the viability of Defendant's defenses and the proper calculation of damages. In particular, Plaintiffs contend that the facts surrounding the alleged violations in Defendant's company are so common as to make this case appropriate for collective treatment and relief. Defendant, however, argues the matter is too individualized for collective treatment. Defendant likely would have filed a Motion to Decertify this case at the close of discovery. The parties faced serious risk on this pivotal issue. Likewise, the parties hotly contested the proper method of calculating damages for the period when Defendant relied upon the fluctuating workweek method of pay. The Court's ruling on such an issue would have affected the viability of Plaintiffs' claims and the amount of damages they could potentially recover. As reflected in the Settlement Agreement, the proposed settlement brings substantial value to Plaintiffs.

The Settlement Agreement is also fair and reasonable because this case threatened to become even more complex, expensive and lengthy. This case has not yet been set for trial, but at the time the parties reached their agreement, two months remained before the discovery deadline, and dispositive motions were due a month later. Without settlement, the parties would have taken additional discovery of key management witnesses and other opt-in Plaintiffs, filed other dispositive motions and argued over the propriety of retaining this matter as a collective action. Even if Plaintiffs had prevailed on the merits via summary judgment or trial, an appeal to the Fifth Circuit likely would have resulted. Under such a scenario, Plaintiffs would not see any money from this case, if any, until years from now. The Settlement Agreement brings immediate benefit to the Plaintiffs.

The Settlement Agreement is also fair because it calls for a fair distribution to the Class Members of a substantial settlement fund. The distribution is based on the hours each class member worked during the relevant period, their respective hourly rates and the amount they received from Defendant in the form of various so-called expense reimbursements. The same formula is used to determine the amount of the settlement fund to be paid to each Class Member, including the class representatives. No special treatment is afforded to anyone. That is, Class Members shall receive their proportionate share of the settlement based on the hours they worked during the relevant period using the exact same formula. The formula used to determine each person's claimed damage is based on the difference between the overtime they were paid and the overtime Plaintiffs claim they should have been paid.

The attorneys' fees are reasonable and fair as well. Plaintiffs' counsel devoted more than 26 months to working on this case and negotiated a settlement that benefits a large group of Plaintiffs. Plaintiffs executed a contingency fee agreement to pay counsel 40% of the gross

recovery plus litigation expenses. Plaintiffs request the court approve their contract fee of 40% as stated in the settlement agreement. Such fees are justified as a matter of contract, but especially in this case where counsel worked diligently for more than two years on a contingency basis.[3] Plaintiffs request that the Court take judicial notice of the docket, which reflects the quantity and quality of work done by Plaintiffs' counsel. Among other things, Plaintiffs attended approximately ten depositions, drafted numerous motions and responded to the motions filed by Defendant, kept in constant contact with the class representatives and managed communication with all Class Members, drafted a Motion for Partial Summary Judgment, hired and interacted with Plaintiffs' expert regarding the computation of damages, invested more than $64,000 in litigation costs to properly develop the case (largely spent on experts, travel costs, deposition fees and mediation fees) without any assurance of payment, and performed all other work necessary to achieve the large recovery for their clients. The legal theory of Plaintiffs' claims required substantial expertise in the wage and hour field. This FLSA case by no means was a garden variety wage and hour case. On the contrary, due the complexity and volume of the records involved in this case, other members of the plaintiffs' bar may not have even recognized the alleged violation. Moreover, all plaintiffs are aware of the contingency fee nature of the relationship. They were informed of the contingency fee nature in the Notice of Rights approved by this Court.

The Settlement Agreement is also fair because it provides for reasonable incentive awards to the Class Representatives. The agreement calls for incentive awards to each of the

---

[3] *See Green-Johnson v. Fircroft*, et al., No. Civ. A. 4:12-cv-01307 (S.D. Tex., April 3, 2013); Doc. 50 (J. Rosenthal)(approving 40% contingency fee in an FLSA collective action); *Covey, et al. v. Iron Cactus, et al.;* No. Civ. A. 1:12-cv-00111-SS (W.D. Tex. August 6, 2013)(approving 40% contingency fee in FLSA collective action); *Villarreal, et al. v. Source Refrigeration & HVAC, Inc.*; No. Civ. A. 1:12-cv-00243 (W.D.Tex., October 8, 2013); Doc. 71; (J. Sparks)(approving 40% contingency fee in FLSA collective action); *Karim v. Finch Shipping Co.*, Ltd. 233 F. Supp. 2d 807, 811 (E.D. LA 2002) (40% contingency fee approved).

four Class Representatives. The Class Representatives were instrumental in developing the facts and legal theories in this case since the inception. They were each deposed for nearly six hours. They provided documents to Plaintiffs' Counsel that helped develop the case, communicated on a regular basis with Plaintiffs' counsel regarding case developments and review of records, attended both full-day mediations, and in general served the interest of the Class Members. They also continuously served, as class representatives should, as a liaison between class counsel and the opt-in plaintiffs. They took out considerable time from their personal and professional lives to help their co-workers vindicate their rights under the FLSA. In exchange for their incentive awards, they are signing a General Release of all claims, whereas the opt-in Plaintiffs are releasing only claims related to their wages. Class Representatives stepped forward to champion the rights of their co-workers in the face of potential retaliation. However, courts often approve higher incentive awards to class representatives who are currently employees due to the risk of retaliation.[4] To be clear, Plaintiffs do not allege retaliation in this case, but the fear is real nonetheless and often deters workers from putting their name on the title of a case.

The modest incentive awards **represent less than 1% of the total settlement**,[5] which is well within line of incentive awards approved in other cases. *See, e.g., Watson, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, 4:10-cv-00986, Doc. 338 (Aug. 8, 2013) (J. Lake)(approving incentive awards of $7,500 and $10,000 for multiple class representatives in

---

[4] *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007)(approving a $25,000 service award to a class representative due to the inherent risks of pursuing a class claim); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890(E.D.Pa., Dec. 1, 2004)(approving award of $20,000 to each class representative in a case that settled for $1.125 million, citing the risks to the representative in commencing the suit as a factor); *Stevens v. Safeway, Inc.*, No. CV 05-01988, 2008 U.S. Dist. Lexis 17119 (C.D. Cal., Feb. 25, 2008)(approving $20,000 incentive award to class representative and citing the risks of filing as a factor).
[5] The proposed incentive awards combined represent only 0.009 of the entire settlement amount.

case that settled for $4.35 million).[6] Such sums are reasonable and justified given the time they spent away from their work and families and the results they helped obtain for the class members.

The terms of the settlement have been approved by Plaintiffs, their counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length with the assistance of Gloria Portela, a professional well-reputed mediator at Seyfarth Shaw, who specializes in these types of cases, and subsequently, with the assistance of Richard Bran at Baker & Botts, who likewise is a professional well-reputed mediator with experience in cases like this one. Plaintiffs entered into the Settlement Agreement voluntarily and knowingly, and each understands fully that he or she is relinquishing his or her claims in this matter in exchange for the agreed upon settlement. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

The Parties further agree that as a condition of settlement, the terms of the settlement will be kept confidential. Accordingly, the Parties are filing the settlement agreement under seal as Exhibit 1 hereto. The Parties jointly request that the Court keep the terms of the Settlement Agreement and the Settlement Agreement itself confidential, and the parties respectfully request that the Settlement Agreement not be included in the documents and papers publicly filed in this matter.

### III.  Conclusion.

For the foregoing reasons, the Parties respectfully request that the court enter the proposed Order approving their settlement agreement and the proposed Order dismissing the

---

[6] *See also, Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving incentive awards that comprised 8.4% of the total settlement fund); *Murillo v. Pac. Gas & Elec. Co.*, No. CIV 08-1794, 2010 WL 2889728 (E.D.Cal., July 21, 2010) (approving incentive payments that comprised 5% of the settlement fund).

case as specified therein. The Parties further respectfully request that the Court maintain the confidentiality of the Settlement Agreement by allowing it to be filed under seal and not permitting any portion of the agreement or its terms to be disclosed publicly.

                              Respectfully submitted,

By: /s/ *Galvin B. Kennedy w/p CKC*
Galvin B. Kennedy
Texas Bar No. 00796870
gkennedy@kennedyhodges.com
Kennedy Hodges, L.L.P.
711 W. Alabama St.
Houston, Texas 77006
713.523.0001
713.523.1116 facsimile

**ATTORNEYS FOR PLAINTIFFS**

By: */s/ M. Carter Crow w/p CKC*
State Bar No. 05156500
Federal I.D. No. 15048
carter.crow@nortonrosefulbright.com
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

This is a joint motion and, as such, the parties agree to the relief requested herein.

                              /s/ Colleen K. Cockrum
                              Colleen K. Cockrum

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served upon counsel of record via the ECF System on January 7, 2014.

/s/ Colleen K. Cockrum
Colleen K. Cockrum